# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

United States of America

v.

1. Jose Angel Gonzalez-Carrillo
2. Ethyel Aldahyr Ontiveros-Flores

Case No.: 25 - 8318 MJ

**CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date of June 2, 2025, in the County of Maricopa, in the District of Arizona, the defendants, Jose Angel Gonzalez-Carrillo and Ethyel Aldahyr Ontiveros-Flores, violated Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(vi), an offense described as follows:

Knowingly and intentionally conspiring to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance.

I further state that I am a Special Agent with the United States Drug Enforcement Administration (DEA) and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

AUTHORIZED BY: AUSA William Bryan
*Digitally signed by WILLIAM BRYAN Date: 2025.06.03 15:25:51 -07'00'*

Guillermo Peña, Special Agent, DEA
Name of Complainant

GUILLERMO PENA
*Digitally signed by GUILLERMO PENA Date: 2025.06.03 15:21:34 -07'00'*
Signature of Complainant

Sworn to telephonically and subscribed electronically

6-3-25
Date

at   Phoenix, Arizona
City and State

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## STATEMENT OF PROBABLE CAUSE

I, Guillermo Peña, Special Agent of the United States Drug Enforcement Administration ("DEA"), being duly sworn, declare and state as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. I, Guillermo Peña (hereafter referred to as "Affiant), am a Special Agent (SA) with the DEA. As such, I am an investigator or law enforcement officer of the United States empowered by law to conduct investigations and make arrests for any felony offense cognizable under the laws of the United States, pursuant to Title 21, United States Code, Section 878.

2. In July 2021, your affiant graduated from the DEA Basic Agent Academy at the Department of Justice Academy in Quantico, Virginia. In total, your Affiant received in excess of 700 hours of comprehensive formalized classroom instruction. The training your Affiant received consisted of several hundred combined hours of instruction in the following categories: legal instruction, drug identification, evidence handling, report writing, confidential source management, undercover, defensive tactics/firearms, and interview/interrogation. During your Affiant's tenure with DEA, your Affiant has investigated Title 21 and related conspiracy violations.

3. By virtue of his employment, your Affiant has performed various tasks, which include, but are not limited to:

    (1) Functioning as a surveillance agent, thus observing and recording movements of persons suspected of trafficking in drugs and money laundering; and

    (2) Interviewing witnesses, cooperating individuals, and informants relative to the trafficking of drugs and the distribution of money and assets derived from the trafficking of drugs (laundering of monetary instruments).

4. In July 2021, your Affiant reported to the DEA Phoenix Field Division in Arizona where your Affiant worked in the High Intensity Drug Trafficking Area ("HIDTA"). Your Affiant is duly sworn as a peace officer of the State of Arizona by the Sheriff of Maricopa County authorizing your Affiant to enforce Arizona State law.

5. Your Affiant attended the Mesa Police Academy where he received over 875 hours of training over a period of 20 weeks. During this time, your Affiant received extensive training on broad law enforcement topics. Specifically, this training included drug-related topics, to include but not limited to: drug identification, drug concealment methods, drug laws, and drug effects on the human body. During the course of your Affiant's employment with the DEA as a SA, your Affiant has participated in and/or conducted drug conspiracy investigations. Your Affiant assisted in conducting physical and electronic surveillance, and authored reports.

6. In the course of conducting drug investigations, your Affiant has consulted with other experienced investigators concerning the practices and the best methods to investigate drug traffickers. In preparing this Affidavit, your Affiant has conferred with other special agents and law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, your Affiant has personal knowledge of the following facts or has learned them from the individual(s) mentioned herein. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by agents of the DEA or other law enforcement officers.

7. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

## PROBABLE CAUSE

8. On June 2, 2025, a Phoenix, Arizona metropolitan area drug broker, later identified as Jose Angel Gonzalez-Carrillo (hereinafter, "GONZALEZ-CARRILLO"), communicated with a DEA confidential source (hereinafter, the "CS") to arrange the delivery of approximately 100,000 fentanyl pills to the CS in the Phoenix, Arizona, metropolitan area. The fentanyl pill transaction was coordinated, in part, by the CS. The CS recorded all calls between the CS and GONZALEZ-CARRILLO.

9. The CS that provided this information to law enforcement is believed to be credible and reliable. The CS is working for financial compensation. To date, the CS has been involved in numerous law enforcement operations, which have led to the seizure of

distribution quantities of methamphetamine, cocaine, fentanyl powder, M/30 fentanyl pills, and proceeds believed to be generated through the sale of controlled substances. The CS has numerous contacts throughout Arizona and Mexico who provide the CS with drug-related information. The CS shares this information with the DEA.

10. On June 2, 2025, the CS agreed to purchase approximately 100,000 fentanyl pills from GONZALEZ-CARRILLO at a price of US$.55 per pill. The CS and GONZALEZ-CARRILLO agreed to conduct the transaction in two segments. In the first segment, the CS would purchase 10,000 fentanyl pills from GONZALEZ-CARRILLO for US$5,500.[1] Provided the first segment of the transaction was successful, the CS and GONZALEZ-CARRILLO agreed to conduct the second segment of the transaction, that is, the CS would purchase an additional 90,000 fentanyl pills from GONZALEZ-CARRILLO. On that same day (June 2, 2025), GONZALEZ-CARRILLO and the CS agreed to conduct the first segment of the fentanyl pill transaction at a location in Phoenix, Arizona.

11. On that same date, GONZALEZ-CARRILLO informed the CS that a local Phoenix-based courier, later identified as Ethyel Aldahyr Ontiveros-Flores (hereinafter, "ONTIVEROS-FLORES"), would deliver the fentanyl pills to the CS. GONZALEZ-CARRILLO and the CS agreed to conduct the first segment of the fentanyl pill transaction in the vicinity of West Thomas Road and North 67th Avenue in Phoenix, Arizona. At approximately 12:50 p.m., GONZALEZ-CARRILLO instructed the CS to meet him (GONZALEZ-CARRILLO) at West Thomas Road and North 67th Avenue in Phoenix, Arizona. Law enforcement officers then directed the CS to park in the agreed-upon parking lot. Shortly thereafter, law enforcement officers established surveillance and observed a green in color Ford Focus enter the same agreed-upon parking lot. The Ford Focus parked a few parking spaces behind the CS' vehicle. Law enforcement officers observed GONZALEZ-CARRILLO unaccompanied and seated in the driver's seat of the Ford

---

[1] Law enforcement officers utilized law enforcement Official Advanced Funds ("OAF") with annotated serial numbers.

Focus.

12. At this time, GONZALEZ-CARRILLO exited his (GONZALEZ-CARRILLO's) vehicle and walked over to the CS' vehicle. GONZALEZ-CARRILLO entered the front passenger side of the CS' vehicle to discuss the aforementioned 10,000 fentanyl pill transaction. GONZALEZ-CARRILLO was present during this initial meeting to introduce himself to the CS in-person and to further discuss the 100,000-fentanyl pill transaction. GONZALEZ-CARRILLO then informed the CS that the CS would receive the remaining 90,000 fentanyl pills at a later time on that same day (June 2, 2025).

13. Shortly thereafter, GONZALEZ-CARRILLO advised the CS that the local courier would be arriving shortly for the 10,000-fentanyl pill transaction. At approximately 1:04 p.m., a silver in color Volkswagen Jetta parked next to the CS' vehicle on the passenger's side. The driver, ONTIVEROS-FLORES, handed GONZALEZ-CARRILLO a bag containing the suspected 10,000 fentanyl pills, whereafter GONZALEZ-CARRILLO handed the same bag to the CS. The CS then provided GONZALEZ-CARRILLO US$5,500 in OAF. Shortly thereafter, ONTIVEROS-FLORES departed in the Volkswagen Jetta. GONZALEZ-CARRILLO entered the Ford Focus and departed the area.

14. Shortly thereafter, the CS discussed obtaining the remaining 90,000 fentanyl pills with GONZALEZ-CARRILLO. GONZALEZ-CARRILLO and the CS discussed an address near the area where the first deal took place in Phoenix, Arizona in order to conduct the second segment of the fentanyl pill transaction. GONZALEZ-CARRILLO and the CS agreed to meet in the area of North 66th Drive and West Weldon Avenue, in Phoenix, Arizona to consummate the second segment of the fentanyl pill transaction.

15. At approximately 3:45 p.m., law enforcement officers established surveillance in the area of North 66th Drive and West Weldon Avenue, in Phoenix, Arizona. Surveillance units observed the same Ford Focus driven by GONZALEZ-CARRILLO to the first segment of the fentanyl pill transaction, as well as GONZALEZ-CARRILLO standing in the vicinity of North 66th Drive and West Weldon Avenue. Law enforcement officers also observed a blue Toyota Tacoma pickup truck driven by ONTIVEROS-FLORES, who was accompanied by a Hispanic male (hereinafter, the

"Male") seated in the front passenger seat. Law enforcement officers instructed the CS to drive to the area where GONZALEZ-CARRILLO, ONTIVEROS-FLORES, and the Male were located at the pre-agreed location. Once the CS drove past the blue Toyota Tacoma, GONZALEZ-CARRILLO instructed the CS to park in front of the blue Toyota Tacoma. GONZALEZ-CARRILLO advised the CS that the fentanyl pills were located in the blue Toyota Tacoma.

16. Shortly thereafter, law enforcement officers wearing clearly marked "police" attire activated their emergency lights and sirens and approached the blue Toyota Tacoma. Law enforcement officers detained GONZALEZ-CARRILLO, ONTIVEROS-FLORES, and the Male without further incident.

17. During a search of the blue Toyota Tacoma incident to the arrest of GONZALEZ-CARRILLO, ONTIVEROS-FLORES, and the Male, law enforcement officers discovered dark-colored containers and a backpack containing thirteen (13) individual plastic bags of suspected fentanyl pills. The total gross weight (including packaging) of the suspected fentanyl pills was approximately 14.5913 kilograms.* Law enforcement officers also conducted a field-test of a sample of the suspected fentanyl pills, which indicated presumptive positive for the presence of fentanyl.

18. Investigators confirmed that the cellular telephone used to coordinate the fentanyl pill transaction with the CS was the same cellular telephone possessed by GONZALEZ-CARRILLO. During a search of GONZALEZ-CARRILLO incident to arrest, law enforcement officers discovered US$1,500 in bills that matched the serial numbers of the OAF utilized to conduct the controlled purchase of the initial 10,000 fentanyl pills earlier that same day.

19. Post-arrest, post-*Miranda*, GONZALEZ-CARRILLO admitted to coordinating and brokering the 100,000-fentanyl pill transaction.

20. Post-arrest, post-*Miranda*, ONTIVEROS-FLORES acknowledged participating in the delivery of fentanyl pills to a third-party. During a consensual search of ONTIVEROS-FLORES' residence, law enforcement officers discovered and seized an undetermined amount of bulk cash within ONTIVEROS-FLORES' bedroom. During a

5

\* SEE ATTACHMENT 1.

consensual search of vehicles utilized by ONTIVEROS-FLORES, law enforcement officers discovered approximately 22.9412 kilograms (including packaging) of suspected fentanyl pills, approximately 3.2033 kilograms (including packaging) of suspected fentanyl powder, and an additional 6.4192 kilograms (including packaging) of suspected fentanyl powder, respectively.* Law enforcement officers thereafter conducted a field-test of a sample of the suspected fentanyl pills and fentanyl powder, each of which indicated presumptive positive for the presence of fentanyl.

21. Post-arrest, post-*Miranda*, law enforcement officers released the Male pending further investigation.

22. Based on the facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that GONZALEZ-CARRILLO and ONTIVEROS-FLORES did knowingly and intentionally conspire to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(vi).

GUILLERMO PENA
Digitally signed by GUILLERMO PENA
Date: 2025.06.03 15:22:28 -07'00'

Guillermo Peña
Special Agent
U.S. Drug Enforcement Administration

Subscribed electronically and sworn to telephonically on this ___3rd___ day of June, 2025.

HONORABLE JOHN Z. BOYLE
UNITED STATES MAGISTRATE JUDGE

\* SEE ATTACHMENT 1.

